**Jerell OWENS,[1] Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A05–0803–CR–170.

Court of Appeals of Indiana.

Dec. 9, 2008.

John T. Wilson, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew Whitmire, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Jerell Owens (Owens), appeals his convictions and sentence

---

1. Owens' first name is spelled "Jerrell" in the briefs of the parties, but it is spelled "Jerell" throughout the record on appeal.

for murder, a felony, Ind.Code § 35–42–1–1, and robbery resulting in serious bodily injury, a Class A felony, I.C. § 35–42–5–1.

We reverse and remand with instructions.

### ISSUE

Owens appeals both his convictions and his sentence, but we find the following issue to be dispositive: Whether Owens' convictions for both murder and robbery resulting in serious bodily injury violate the prohibition against double jeopardy.

### FACTS AND PROCEDURAL HISTORY [2]

The State presented the following evidence at trial. On February 4, 2007, Owens, Damian Hopkins (Hopkins), Richard Wilson (Wilson), and Perry Thompson (Thompson) were gambling, smoking marijuana, and drinking beer in Anderson, Indiana. Hopkins won several hundred dollars from Owens in a dice game. While on the phone with Hopkins' brother, Owens confirmed that he was losing money to Hopkins and said that he "would get it back later on." (Transcript p. 553).

At some point that night, Owens obtained a key for Janice Jordan's apartment, and the four men went there. While Hopkins was sitting and talking to his sister on the phone, Owens said to him, "[G]ive me back my mother f* * * * * * money n* * * * *." (Tr. p. 297). Owens then shot Hopkins in the head. Hopkins stood up holding the back of his head and asked, "[W]hy?" (Tr. p. 776). Hopkins then fell to the floor and continued to ask, "[W]hy cuz? Why?" (Tr. pp. 776–77). Owens stood over Hopkins, asked him why he was still talking, and shot him in the head a second time. Owens then took money from Hopkins' pocket and told Wilson and Thompson to move the body. Wilson and Thompson drug Hopkins' body outside. As Owens, Wilson, and Thompson left the apartment, Owens kicked the door twice "to make it look like somebody broke in." (Tr. p. 782). Hopkins died as a result of the shooting.

On February 8, 2007, the State filed an Information charging Owens with Count I, murder, a felony, I.C. § 35–42–1–1, and Count II, robbery resulting in serious bodily injury, a Class A felony, I.C. § 35–42–5–1. A jury trial was held from December 10–14, 2007. The jury found Owens guilty as charged, and the trial court entered judgments of conviction on both counts. On January 14, 2008, the trial court imposed consecutive sentences of sixty years for murder and fifty years for robbery resulting in serious bodily injury, for a total executed sentence of 110 years.

Owens now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ On appeal, Owens contends that his convictions for both murder and robbery resulting in serious bodily injury, a Class A felony, violate the prohibition against double jeopardy. In the Indiana Constitution, the prohibition against double jeopardy appears in Article I, Section 14: "No person shall be put in jeopardy twice for the same offense." Our supreme court laid out the parameters and the applicable analysis of that provision in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). In addition, in Indiana, "we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Rich-*

---

2. We remind Owens' counsel that Indiana Appellate Rule 50(C) states that the table of contents for the appendix must include the date for each item.

*ardson." Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002). One of those rules prohibits "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Richardson,* 717 N.E.2d at 56 (Sullivan, J., concurring). Owens argues that his separate convictions and sentences for murder and robbery resulting in serious bodily injury violate this rule. We agree.

Indiana's robbery statute provides as follows:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

I.C. § 35–42–5–1. The Information charging Owens with robbery as a Class A felony provided:

On or about February 4, 2007 in Madison County, State of Indiana, Jerell Owens did knowingly take property, to-wit: an undetermined amount of United States currency from Dami[a]n Hopkins or the presence of Dami[a]n Hopkins, by using force or by threatening the use of force, said act resulting in serious bodily injury to Dami[a]n Hopkins, to-wit: death.

(Appellant's App. p. 9). The charging information makes clear that the serious bodily injury that enhanced Owens' robbery charge from a Class C felony to a Class A felony—Hopkins' death—was the very same harm for which Owens was convicted and punished for murder. As our supreme court held in *Spears v. State,* 735 N.E.2d 1161, 1164–65 (Ind.2000), *reh'g denied,* "Where a robbery conviction is elevated to a Class A felony based on the same serious bodily injury that forms the basis of a murder conviction, the two cannot stand." Therefore, Owens' convictions cannot stand.[3]

The State argues that both of Owens' convictions can stand under *Carrico v. State,* 775 N.E.2d 312 (Ind.2002), and *Robinson v. State,* 775 N.E.2d 316 (Ind.2002), in which our supreme court rejected the double jeopardy arguments of two co-defendants. The State's argument fails because, in both of those cases, the trial court had already reduced the defendants' robbery convictions from Class A felonies to Class B felonies and, in both cases, our supreme court noted that "[e]nhancement of one offense for the very same harm as another is not permissible." *Carrico,* 775 N.E.2d at 314; *Robinson,* 775 N.E.2d at 320. Therefore, contrary to the State's argument, *Carrico* and *Robinson* support the reduction of Owens' Class A felony conviction.

■ The question, then, is how far Owens' conviction should be reduced. Owens

---

**3.** The State apparently believes that this rule should not apply in this case because the two gunshots to Hopkins' head constitute two separate injuries. However, the charging Information, which was read to the jury as part of the instructions, did not assign one gunshot to the murder charge and the other gunshot to the robbery charge. Rather, the murder charge alleged that Owens shot and killed Hopkins, and the robbery charge alleged that the serious bodily injury was the "death" of Hopkins. (Appellant's App. p. 9). There is no question that Owens was punished twice for the exact same harm.

argues that we should vacate the robbery conviction altogether, contending that he should be convicted only of theft as a Class D felony, I.C. § 35–43–4–2. He urges that there is no evidence that he had the intent to rob Hopkins at the time of the shooting. Rather, the taking of the money was an "afterthought" that occurred after Hopkins was already dead. (Appellant's Br. p. 9). But, as the State points out, there is evidence to the contrary. Hopkins' brother testified that, while he was on the phone with Owens, Owens confirmed that he had lost money to Hopkins and said that he "would get it back later on." (Tr. p. 553). Likewise, Hopkins' sister testified that, while she was on the phone with Hopkins, she heard Owens say, "[G]ive me back my mother f\* \* \* \* \* \* money n\* \* \* \* \*." (Tr. p. 297). Owens then shot Hopkins. This evidence supports the jury's finding that Owens was intent on robbing Hopkins at the time of the shooting.

In *Robinson*, cited above, our supreme court affirmed the trial court's reduction from a Class A felony to a Class B felony because, in addition to being instructed on the serious bodily injury element of Class A felony robbery, the jury was instructed that it must find that Robinson acted "while armed with a deadly weapon." *Robinson*, 775 N.E.2d at 320. As such, Robinson's robbery was enhanced not only by the serious bodily injury, but also by the fact that he was armed with a deadly weapon, which supports an enhancement from a Class C felony to a Class B felony. *See* I.C. § 35–42–5–1. Therefore, the trial court's reduction from a Class A felony to a Class B felony was proper. *Robinson*, 775 N.E.2d at 320. Our supreme court reached the same conclusion in *Gross v. State*, 769 N.E.2d 1136, 1139–40 (Ind.2002), where the defendant was charged with the deadly weapon element and the jury was instructed on that element.

However, where there is no instruction on the use of a deadly weapon, reduction to a Class C felony is the proper remedy. *See Spears*, 735 N.E.2d at 1165 n. 2; *Kingery v. State*, 659 N.E.2d 490, 495–96 (Ind. 1995), *reh'g denied.* Here, the State does not contend that the jury was instructed on the deadly weapon element, and our review of the jury instructions reveals that the only enhancement covered was for serious bodily injury. As such, just as our supreme court did in *Spears* and *Kingery*, we remand this cause to the trial court with instructions to reduce Owens' robbery conviction to a Class C felony and to re-sentence him accordingly, including, if the trial court so chooses, on the murder conviction. *See Matter of Craig*, 571 N.E.2d 1326, 1327–28 (Ind.Ct.App.1991). Because we reach this result, we will not address Owens' challenge to his current sentence.

## CONCLUSION

Based on the foregoing, we conclude that Owens' convictions for both murder and robbery resulting in serious bodily injury violate the prohibition against double jeopardy. Therefore, we remand this cause to the trial court with instructions to reduce Owens' robbery conviction to a Class C felony and to re-sentence Owens accordingly.

Reversed and remanded with instructions.

BAILEY, J., and BRADFORD, J., concur.